Good morning. May it please the Court. As set forth in its briefs, Mega argues that both versions of the Chaser product do not infringe the claims of the 060 patent, and argues that the lower court erred in broadening its claim construction when it ignored the limitations within the claims and broadened those meanings. Specifically, the district court erred when it failed properly to consider the limiting language in Claims 1 and 8, the housing, rod, and sleeve, providing where-between flow passages for formation context, when it decided that a seal was a passage. Thus, the district court broadened the meaning of a flow passage beyond the scope of the claims when the patent teaches that first the plunger rises in the production tube, sealing against the production tube. Upon entering the housing, then these flow passages appear. It further erred by finding a third passageway, under the sleeve and to the side of the sleeve, that acts as a variable flow passage in its conclusions of law, and flies in the face of the disclosure and the claim language, which states that the variable passageway is one of the two passages there-between. Inspection of the drawings and the specifications shows that the there-between passages are vertical passages within the housing. The district court further erred when it ignored the limiting language in Method Claim 22, namely, holding the sleeve in the decoupler by passing formation contents upwardly through the wellhead. Now, through the wellhead is added by the preamble to that claim. Thus, the ignored limitation is that the formation contacts flow there-between the sleeve and the housing, and between the separator rod and the housing, and one of those two is a variable passageway. If not, we ignore that, then Claim 22 reads on all plunger lift devices, because formation contents in a plunger lift operation flow upward until they reach the sleeve, at which time they're blocked by the sleeve and moved to the side. The new subject matter in the Wells Pact is the enlarged flow passages there-between the housing and the rod and the sleeve, with at least one of those passages being a variable passageway. All of these describe vertical movement of flow. Now, these two concepts taken together allow flow upward, up the sleeve, within the housing to the outlet. Now, at the 2005 evidentiary hearing, before the lower court, Inventor Wells, the actual inventor, stated that the lubricator of the housing had been manipulated internally to create these pathways actually built into the housing, and those were his words. In fact, Inventor Wells, at that evidentiary hearing, clearly described the operation of the system based on his patent. In his April 2006 deposition, Inventor Wells himself stated that a flow passage… So, is it your position that the accused product did not have the flow passages? Yes, sir, that is correct. What about, there seemed to be, there was a new court test or demonstration, and the judge seemed to rely on the results of that test to establish the presence of flow passages in the accused device? That's correct. What was done is that device was held upside down so that the plunger would stay in the device and air was passed through, and what it did is it ignored the fact that there's a seal there. A seal is formed by high-pressure volume air or gas, in this particular case gas flowing upward, and the movement between the passages in the plunger itself and the seal then caused a pressure drop in that thing which acts as a seal. This is a well-known mechanical fact. So, that is a seal. If there's not a seal, the plunger cannot come up, it cannot lift the liquid that is trying to get out of formation. And then again, Wells himself said a passageway is by design, so they designed into the housing this passageway, it's a widened passageway, which is the facts will show they don't build anything. At this evidential hearing, when Mr. Wells was questioned about the mega-device, he stated that that was not an effective passage. This is critical. The inventor himself recognized that this passage is not an effective passage. So, Mr. Wells has stated that passages are by design, and he admitted that our device did not have that flow passage. During the course of this litigation, the plaintiff has convinced the court to change this interpretation. So, I view this then as litigation-induced interpretation, which your court found offensive in 90 versus Wolverine, when it's held that a plaintiff cannot, in effect, rewrite its patent claims to suit its needs in litigation. Now, as currently disproved by the district court, the claims, the Wells claims, read on all prior art to these plungers. And this would include his two previous patents, which are failing re-examination, the Berger patent that was written back in the 1930s, the Roach patent, which was written, I believe, in the 1950s, late 50s, the Casey patent, which was written in about 1990, and a whole series of Russian patents, which are prior art, which were written back in the 1960s. Now, if the claims are properly construed, the claims flow there between the housing, rod, and sleeve, then these claims do not read on any prior art. And, in fact, under this construction, then the claims do not read on the mega-device. I gather this prior art was not presented before the district court. Is that correct? We attempted to present that before the district court, but we were not allowed to do that. But you're presenting it to us on what basis? On the basis that the prior art is in the record. The re-examination was brought into court on the record. We weren't allowed to argue that, but it was in the record. Do you want to save the rest of your time? I've got, I'll save the rest of my time. Good morning. May it please the court. As evident by Megalith's briefs and Dr. Oliver's opening statement, Megalith is using this appeal to retry its case. It's retrying its case based on new theories and new arguments in light of evidence that was not before the district court or was properly excluded. Now, MEGA virtually ignores the standards of review or, at best, is lip service. Accordingly, they haven't met their burden of showing a clear error in any of the court's, district court's, holdings on infringement, validity, or damages in that cost profit to where the appropriate damages were. Similarly, they haven't shown abuse of discretion in the exclusion of the Casey prior art reference, purported prior art reference, the exclusion of Mr. Casey as a damages witness for failure to identify him as a witness, and third, the exclusion of Dr. Allworth as their technical expert. Now, there's a few points that he made that I'd like to address. First of all, they talk about in their brief Mr. Wells' testimony during the preliminary injunction hearing and that it's critical to their, critical to their appeal. Well, if it were critical to their appeal, you'd think they would have brought that up during the trial at some point. There's no cites to the trial record because they never brought it up. Second, I think there needs to be some context to that statement. First of all, it was made in a preliminary injunction proceedings early in the case before discovery had been had. We had not received a representative sample of the accused's devices or their dimensions that clearly established during the in-court demonstration by our technical expert that there were passageways there. He did not have that. And finally, it's ambiguous what he meant by not an effective passageway. Was it not effective by itself to support the sleeve in the housing? Was it not an effective flow area to maximize gas production, which is the goal of the two-piece system while you're holding the sleeve in the circuit? So it's ambiguous at best. But most importantly about that statement, it does nothing that goes to their burden of proving that the district court made a clear error in finding infringement because that statement, that testimony was never brought up during the trial on infringement. Let me talk about the reexamination dimensions and the references to the Russian references and also to Roach. The Russian references were never addressed in their invalidity contentions, either their initial or final. More importantly, they were never raised in the summary judgment proceedings. The same is true with the Roach references. They seem to ignore that the court held or had a summary judgment proceeding and simply ignore the record of what was in front of the district court when it granted summary judgment of validity. It can't now come and argue new references that weren't in front of the district court. Again, it goes back to the fact that they're trying to retry their case on appeal. I think the court also recognizes that they're essentially saying that they can't infringe because it would read on all the various prior patents. But the court has recognized in the past that practicing the prior art is not a true attempt to literal infringement. Next, I'd like to talk a little bit about the court's decision to or holding to exclude this purported prior art on Casey. I think it's clear on the record that this came up after the close of discovery, despite the fact that Megillah's president apparently was aware of it since 1999. So the facts in this case are much more egregious than in the O2 micro case where this report there was held not to abuse discretion for excluding new contention, new infringement contention. A three-month delay. Here it was over seven years after they found out about it before they disclosed it to us on the eve of, on the close of discovery. Furthermore, the district court did consider this purported Casey system and its summary judgment ruling, but found it did not rise to the level of clear and convincing because it was uncooperative. There's nothing in that declaration, there's no corroborated evidence of the separator rod, the passages, or this ability to hold the sleeve in the housing by the pressure drop that's created by the flow of fluid around the sleeve while it's in the housing. And thus, at best, it's harmless error for her to have excluded the Casey prior art system. With respect to infringement, as Your Honor mentioned, there was an in-court demonstration by Dr. Lee, our technical expert. He clearly demonstrated that air and liquid could flow through the accused device. And yes, it was upside down. The reason it was upside down is because there was no dispute about whether or not their sleeve was held on the separator rod. It was. That's a stipulated fact. The only issue was how is it being held. Dr. Lee testified that it was being held by the pressure drop, by the flow flowing around it, through it, and underneath the bottom of it. That's it. With respect to claim one, the court found Dr. Lee to be persuasive and credible. And as the court knows, virtually credibility determinations by the fact finder are virtually never clear error. At best, all they're doing is re-arguing their side, their view of the evidence. That doesn't rise to the level of clear error. As the court, I'm sure, is aware, if there's two plausible views of the evidence, the fact finder's selection in one of those choices is not clear error. They're doing nothing more than re-arguing their view of the evidence that was rejected by the district court. The district court also quickly found that the claim language doesn't limit the direction of the passageways, how those passageways are created. Or the size of those passageways. With respect to Dr. Allworth's contention that, well, he said there's only one passageway and you had to create that specially. That's not exactly what he said. He said yes, he made one embodiment. He made one system that had that passageway that's shown in figure five of the patent. However, he said he didn't need it. His customers didn't want it. So he switched over to one that's represented in figure one of the patent. And that was his commercial embodiment that the court found was in strong demand. By consumers, it explained why sales took off 2,000% after the introduction of that system. So it's wrong factually for him to be arguing that that was the only embodiment that covered the O60 patent. He seems to also completely disregard the embodiment shown in figure six of the patent. That clearly describes and culminated the horizontal flow path between the bottom of the sleeve and the outlet in the house. Mr. Lechinger, the district court only addressed the notice requirement in a brief paragraph. Yes. It appears on page 834 of the appendix. As I understand it, the notice only affects a relatively small period of sales. The notice, as I understand it, was only on the rod. Is that correct? That's correct. It's an unusual place to put notice on a piece of a product that is assembled. It only appears when you either replace that rod or if you disassemble the unit. Why was the notice not on the outside? I can't answer that question. Why was the notice not on the outside? They have shown—or let me come back up to that. The reason that that was the most— Your significant question is why shouldn't a notice placed on a part inside the assembly be deemed satisfactorily by the statute? The statute doesn't say anything about where the patent has to be marked. Of course it doesn't. But, Your Honor, the separated rod in the commercial system uses a teardrop-shaped rod, a very unique feature. And that's the most unique feature in our system. And so that would be the piece that would stick out to most consumers when they saw this. We sell it separately as a replacement item. They tend to wear out anywhere from six months to nine months. They're easily installed. They're easily removed. That seemed to be the most reasonable place to market. His other patents deal with the plunger itself. The housings have been around for years and years. It's the separator rod, and in this particular instance, the teardrop-shaped separator rod, which clearly separates the patent and invention of the OCC patent over all the prior art. And that seemed to be the most reasonable place to mark the patent. Okay. Any other questions? No questions. Okay. Anything else you need to tell us? I think our briefs address everything. Thank you, Mr. Judge. Mr. O'Brien. Thank you, Your Honor. I need to point out when we arbitrarily sit back and say, well, look at figure one, and that's what we manufactured. The claims state the housing, rod, and sleeve providing there between flow passages. It's plural. It's not singular. Flow passages. For formation contents, at least one of the flow passages being a variable cross-sectional size. The whole concept behind this particular plunger lift device was to have a single outlet plunger lift device at the top. Now, most plunger lift devices today have two outlets, one at the top and one at the side. It's very difficult to plumb these in the feed. The reason that there's one at the top is as the plunger comes up and lifting the fluid, the fluid goes out through the top. Then when the plunger comes into place in the housing, it seals. If it didn't seal, there would not be a need for the second outlet underneath the sleeve where actually the rest of the formation contents flow until either the feed shuts in or the device says, okay, time to close and allow the plunger to go back down and continue the cycle. On the question of damages, if that device is off... This is rebuttal, so I don't think about any damages. So I think you should talk about it. But you must have in mind that your opponent is going to have an opportunity to... I will stop at that stage, Your Honor. Thank you. Thank you. Any questions?